FILED

FEB - 3 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 02-17736 |
| ENOCH PACKING COMPANY, | |
| Debtor. | Adv. 05-1297 |
| JOE AND CONNIE FLORES | DC Nos. THA-1, BMJ-1, FAR-1, JLW-1, CBH-1, RJS-2, and PJG-1 |
| Plaintiff, | |
| vs. | |
| DDJ, INC., et al., | |
| Defendants. | |

FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING MOTIONS TO DISMISS

A hearing was held December 7, 2005, on nine motions to dismiss filed by various defendants in this adversary proceeding. Motions to dismiss were filed by the following defendants: Central Valley Community Bank; James Salven as chapter 7 trustee for DDJ, Inc.; Bank of the West; Charlene Enoch; Michael L. Farley, Valerie R. Chrissakis, and The Farley Law Firm; Beth Stratton as chapter 7 trustee for DDJ, LLC; Sheryl Strain as chapter 7 trustee for Dennis Vartan; Judith Yeramian, individually and as trustee of the Judith Mary Yeramian Family Trust, Sandy L. Vartan, individually and as trustee of the Sandy Vartan Trust, Janice Enoch-Kroger; Dennis Hagobian, Victoria Hagobian, the Dennis Hagobian Residential Trust, the Victoria Hagobian Trust, and Yosemite Technologies, Inc.  The various defendants proceeded on a number of different theories.  This is the findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.  This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A) and (O).

1

Background Facts.

    The District Court Action.

    Joe and Connie Flores ("Flores") filed a lawsuit in district court in June 1999, alleging that the defendants had deprived them of the value of their crop (the Flores were apple growers) and had charged usurious interest. Flores contended in district court that the actions of the various defendants violated various provisions of the Perishable Agricultural Commodities Act ("PACA"), civil RICO statutes, and other laws. In a memorandum opinion dated January 26, 2000, the district court dismissed the PACA claims against the individual defendants with leave to amend. The court also dismissed the PACA claims against the entity defendants, Fruit Marketing, Inc. and Food Marketing Investment Co. ("FMI" and "FMIC") with leave to amend. The court dismissed without leave to amend claims under California Fruit and Agriculture Code § 56251; 56271; 56275; 56278; 56280; 56301; 56301; and 56331.

    Flores then filed a First Amended Complaint. Again, defendants moved to dismiss some of the claims in the First Amended Complaint. The district court dismissed a claim against DDJ, Inc.[1] under 7 U.S.C. § 499(b)(2) with leave to amend. The district court dismissed claims under 7 U.S.C. § 499(b)(4) with leave to amend to include more refined time and date allegations. The state fraud claim was dismissed with leave to amend.

    The district court's ruling on the alter ego question is important for the purposes of the motions to dismiss in this adversary proceeding. Certain defendants moved to dismiss a state fraud claim in district court due to insufficient alter ego allegations in the First Amended Complaint. In its ruling, the district court quoted the California Supreme Court in explaining alter ego theory:

> "[T]he conditions under which a corporate entity may be disregarded vary according to the circumstances in each case. It has been stated that the two requirements for application of this doctrine are (1) that there be such unity of interests and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will

---

[1] Fruit Marketing, Inc. by that time was known as DDJ, Inc. and by the time of the second motion to dismiss, Fruit Marketing Investment Company was known as DDJ, LLC.

follow." <u>Automotriz Del Golfo De California S.A. De C.V. v. Resnick</u>, 47 Cal. 2d 792, 796 (Cal. 1957)(quotations omitted).

The district court concluded that the alter ego allegations in the complaint were insufficient but provided further guidance to Flores. The court observed:

> "Although one further opportunity to amend will be allowed, as noted in the court's prior order, the alter ego theory is typically used by a plaintiff to recover a debt owed by a corporation from individuals or other entities to which the liable corporation's assets may have been fraudulently transferred. According to state case law, the alter ego theory is normally presented in a post judgment motion to amend the judgment to add the 'alter ego' as a judgment debtor, or in a second action to enforce a prior judgment against a corporation against those alleged to be the alter egos of the debtor corporation. <u>Brenelli Amedeo, S.P.A. v. Bakara Furniture, Inc.</u>, 29 Cal. App. 4th 1828, 1840-41 (Cal. Ct. App. 1994). Should Flores chooses [sic] not to amend the alter ego allegations at this time, any claim of liability based upon such a theory will be dismissed without prejudice to consideration in a later proceeding. In other words, state law does not require Flores to plead in their complaint the alter ego theory in order to preserve the option of pursuing that theory when attempting to recover a judgment against a corporation debtor."[2]

Flores then filed a Second Amended Complaint, and a motion to dismiss it soon followed. The district court granted that motion in part and denied it in part. in a memorandum decision.[3]

Flores then moved for relief to file a Third Amended Complaint. That motion was denied with prejudice.

The matter went to trial in the district court. Following a jury trial, the jury returned a special verdict for plaintiffs Joe and Connie Flores against defendants DDJ, Inc. and DDJ, LLC. The jury also returned a special verdict awarding punitive damages against those defendants.[4]

The special verdict addressed solely the liability of defendants DDJ, Inc. and DDJ, LLC. The jury found against defendant DDJ, Inc. on a number of theories including unfair, unreasonable, discriminatory, or deceptive practice; false or misleading statements in connection

---

[2] Memorandum Opinion filed July 21, 2000.

[3] The court takes judicial notice of the docket in the district court action, which is attached to the request for judicial notice filed by defendants Vartan, Yeramian, and Enoch-Kroger, et al. (Docket Control No. CBH-1).

[4] See, Notice of Erratum filed by Flores on September 20, 2005. The underlying special verdict is attached to the complaint herein.

3

with the sale of plaintiff's commodities; failure to account and make full payment to Flores; breach of contract; fraud; breach of fiduciary duty; conversion; and in addition to awarding actual damages, awarded punitive damages.

As to defendant DDJ, LLC, the jury found that DDJ, LLC had converted the property of the plaintiff and that the conversion was malicious, oppressive, or fraudulent. The jury also found that punitive damages were appropriate.

On March 10, 2004, the district court ordered judgment entered in favor of plaintiff.[5] Various post trial motions ensued. A motion for a new trial was denied. A defense motion to reduce the punitive damages award was granted. On July 6, 2004, DDJ, Inc., and DDJ, LLC, filed a notice of appeal. Flores moved to add judgment debtors. Before that motion could be decided, the bankruptcy cases were filed and the district court action stayed.

Bankruptcy Court Matters.

There are four relevant bankruptcy cases.

An involuntary petition under chapter 7 was filed against Enoch Packing Company ("Enoch Packing") on August 22, 2002. The case was converted to chapter 11, and an order for relief entered September 24, 2002. In February 2003, the case was converted from chapter 11 to chapter 7, and Robert Hawkins was appointed as chapter 7 trustee.

DDJ, Inc. filed a voluntary petition under chapter 7 on January 3, 2005, and James Salven was appointed as chapter 7 trustee. On that same day, DDJ LLC, filed a voluntary petition under chapter 7, and Beth Stratton was appointed as chapter 7 trustee.

Somewhat later, on July 18, 2005, Dennis Vartan filed a voluntary petition under chapter 7, and Sheryl Ann Strain was appointed as chapter 7 trustee.

No adversary proceedings concerning Flores have been filed in any of these cases but the Enoch Packing case.

The four bankruptcy cases are intertwined. The district court judgment was against DDJ, Inc. and DDJ, LLC., both chapter 7 debtors. In the Enoch Packing case, the trustee of DDJ, Inc.,

---

[5]District court docket numbers 274 and 275.

4

James Salven, has filed a motion for allowance of a Perishable Agricultural Commodity Act ("PACA") trust claim, and that motion is based on the Flores claim in the DDJ, Inc. case. Flores has filed a declaration in support of that motion. Also in the Enoch Packing case, the chapter 7 trustee has filed an objection to the claims of Joe Flores and of Connie Flores.

In connection with his claim in Enoch Packing, Flores asserts, generally, that he delivered perishable agricultural commodities (apples) to DDJ, Inc. He was not paid. He thus filed the district court action. He eventually discovered, he asserts, that DDJ, Inc. made certain payments to Enoch Packing. Because of those payments, Flores asserts that the funds that Enoch Packing received were impressed with a PACA trust. Enoch Packing's trustee disputes that assertion.

<u>This Adversary Proceeding</u>.

Now, in the Enoch Packing case, Flores has filed an adversary proceeding against some sixty-four defendants. There are now nine motions to dismiss the complaint. The motions assert various grounds for dismissal.

<u>Motion to dismiss filed by Sandy Vartan, Judith Yeramian, et al.(Docket Control No. CBH-1).</u>
The Vartan-Yeramian defendants assert that plaintiffs failed to perfect their PACA trust rights and lost the PACA benefits they seek to recover in the complaint. Additionally, the Vartan-Yeramian defendants assert that the first, second, seventh and tenth claims for relief should be dismissed without leave to amend because they are time barred under the applicable four year statute of limitations of California Code of Civil Procedure § 343.

<u>Motion to dismiss filed by Central Valley Community Bank, formerly known as Clovis Community Bank (Docket Control No. PJG-1).</u>

Central Valley Bank points out that this adversary proceeding is brought against over thirty entity and individual defendants, many of whom have little or no direct relationship to the Flores. Plaintiffs' complaint for damages predominantly seeks to recover funds which DDJ, Inc. or DDJ, LLC, allegedly disbursed or paid to various individuals or entities that are named in the Complaint. Plaintiffs' source of authority for obtaining such relief is 7 U.S.C. § 499(e) et seq., which provides that all commission merchants, dealers, or brokers receiving perishable agricultural commodities hold the receivables and proceeds from the sale of such commodities in

5

a trust for the benefit of all unpaid suppliers or sellers of those commodities.

However, Central Valley Community Bank asserts that no claim for relief can be asserted against it on which relief may be granted because all money it received was for loan repayments in the ordinary course of business without notice that the funds were possibly in breach of a PACA trust and were for value.

Motion to dismiss filed by Michael Farley, et al. (Docket Control No. FAR-1).

Michael Farley asserts that he is the sole partner of the Farley Law Firm and thus the complaint naming Valerie R. Chrissakis is inappropriate as she is an employee of the firm. The Farley motion to dismiss asserts that no claim can be stated against Farley on which relief can be granted because Farley is not a commission merchant, dealer, or broker as defined under 7 U.S.C. § 499 nor an individual shareholder, officer, or director of DDJ, Inc. and/or DDJ, LLC owing a fiduciary duty to Flores.

Motion to dismiss filed by Charlene Enoch (Docket Control No. PJG-1).

This motion is based on the statute of limitations of California Code of Civil Procedure § 343. Farley has also joined in this motion.

Motion to dismiss filed by Dennis Hagobian, et al. (Docket Control No. RJS-2).

The Hagobian defendants move to dismiss the claims against them on the grounds that Plaintiffs have failed to perfect their PACA trust rights and that the statute of limitations has run. They join in the Yeramian/Vartan motion. They also assert that this court has no jurisdiction because PACA trust claims should be heard by the district court, not the bankruptcy court. They further assert that Plaintiffs may not split their causes of action.

Motion to dismiss filed by Bank of the West (BMJ-1).

Bank of the West's motion to dismiss is based on the grounds that this court lacks jurisdiction over the subject matter of the complaint and that the complaint fails to state a claim upon which relief may be granted against the bank.

Motions to dismiss filed by the chapter 7 trustees (Docket Control Nos. THA-1 and JLW-1).

The chapter 7 trustees of the bankruptcy estates of DDJ LLC, and DDJ, Inc., and Dennis

Vartan have moved to dismiss based on violation of the automatic stay.

The elements of the adversary complaint.

There are essentially nine claims for relief against at least 64 separate defendants. Although ten claims for relief were alleged in the complaint, the tenth claim for relief is really a prayer for the equitable remedy of constructive trust rather than a claim for relief. It is important to understand the claims for relief before addressing the arguments in the motions to dismiss.

The first claim for relief applies as to all defendants and is the gateway by which all the other claims for relief enter. The Flores delivered apples and mandarin oranges to DDJ, Inc. for packing and selling in 1995 up to 1998. The Flores assert that DDJ, Inc. acted during those years on the Flores' behalf and created or preserved a perishable agricultural trust, under 7 USC § 499, et seq. (the "PACA trust"). They also assert that the acts of DDJ, LLC, a separate entity, caused the creation or preservation of a PACA trust. The theory is that certain or all the assets of DDJ, Inc. and DDJ, LLC, were impressed with a trust and that all the named defendants in some way received assets traceable to PACA trust proceeds or assets are recoverable by the Flores. Assuming there is a PACA trust and a breach of such a trust, the Flores assert that they suffered $800,000 in damages flowing from such a breach.

The second claim for relief asserts a breach of fiduciary duty by defendants DDJ, Inc.; DDJ, LLC; Dennis Hagobian; Victoria Hagobian; Dennis Vartan; Sandy L. Vartan; The Dennis Vartan Family Trust; Judith Yeramian; The Lee Yeramian Exempt QTIP Trust; W.D. Farming, LLC; Russell Davidson; William Davidson; and Michael Hedberg. Assuming that a PACA trust exists, the Flores assert that individuals and entities in a position to control DDJ, Inc. and DDJ, LLC, were fiduciaries of the PACA trust and are directly and/or secondarily liable for a breach of that trust.

The third claim for relief applies to the Chapter 7 bankruptcy trustees of the bankruptcy estates of DDJ, Inc.; DDJ, LLC; Enoch Packing Company; and Dennis Vartan. Assuming that a PACA trust exists, the Flores assert that four bankruptcy estates possess PACA trust proceeds or assets. Further, the Flores assert that such PACA trust proceeds are the sort that are excluded from the assets of the estate under § 541(d). Accordingly, the Flores seek to compel the turnover.

The Flores have not stated any grounds for personal liability by the bankruptcy trustees.

The fourth claim for relief applies to a class of "service providers." Assuming that a PACA trust exists, the Flores asserts that certain defendants were paid for services rendered by PACA trust proceeds or assets. The Flores assert that these individuals or entities knew or should have known of the PACA trust. The Flores seek to compel disgorgement of funds traceable to PACA trust proceeds or assets.

The fifth claim for relief applies to a class of banks that received payments from alleged PACA trust proceeds and assets on secured loans. Assuming that a PACA trust exists, the Flores assert that certain banks issued loans or lines of credit based upon the inventory and accounts receivables of DDJ, Inc. and DDJ, LLC and that such loans were repaid with PACA trust proceeds or assets. The Flores seek to compel disgorgement of funds traceable to PACA trust proceeds or assets.

The sixth claim for relief applies to a class of express trusts that received PACA trust proceeds and assets. Assuming that a PACA trust exists, the Flores assert that certain trusts received PACA trust proceeds and assets. Accordingly, the Flores seek to compel disgorgement of funds traceable to PACA trust proceeds or assets.

The seventh claim for relief applies to a class of trustees and beneficiaries of the aforementioned express trusts that received benefits traceable to PACA trust proceeds and assets. Assuming that a PACA trust exists, the Flores assert that the trust owners received PACA trust proceeds and assets. Further, Flores assert that the trust owners created the trusts as a shell or formality to cover up fraud. As in the first through seventh claims of relief, the Flores wish to assert breach of PACA trust and seek $800,000 in damages flowing from such breach.

However, unlike the first through seventh claims of relief, the Flores wish to seek additional damages for a variety of maladies peculiar to this class of defendants (a number of whom are also in the class of "controlling persons" identified in the second claim for relief.) The Flores assert that they are entitled to $485,000 per year since 1998 for "apple crop losses." They assert that they are entitled to $200,000 for consequential damages, as they were forced to sell property and relocate. They assert that they are entitled to an unspecified amount of damages for

severe emotional and mental distress. Further, they seek exemplary or punitive damages to deter future conduct.

The eighth claim for relief applies to defendant Traner & Taft, a partnership (the Flores refers to this defendant as the "T&T Partnerships.") Assuming that a PACA trust exists, the Flores assert that the partnership, brought suit against DDJ, Inc.; DDJ, LLC; and individuals within those entities and received PACA trust proceeds and assets in settlement of the litigation. While the Flores were not parties to that litigation and the Flores do not even assert that T&T Partnerships knew of the PACA trust, the Flores nonetheless assert that funds used to settle the litigation were traceable to PACA trust proceeds and assets and recoverable by the Flores. The Flores seek to compel disgorgement of such funds.

The ninth claim for relief applies to defendant Linda Coelho, a recipient of a gift of residential real property by "controlling person" and "trust owner" Dennis Vartan. The Flores do not assert that Linda Coelho knew or should have known of the PACA trust. Assuming that a PACA trust exists, the Flores assert that such a gift is traceable to PACA trust proceeds and assets and recoverable by the Flores.

This court's jurisdiction.

The issue has been raised whether this court has jurisdiction in this adversary proceeding. This adversary proceeding, by asserting claims that implicate bankruptcy estates, involves 11 U.S.C. § 541. That section provides that the commencement of a bankruptcy case creates an estate comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. The bankruptcy court has jurisdiction to decide whether particular property is property of the estate. In fact, that question is a core issue. In re Goodman, 991 F.2d 613, 617 (9th Cir. 1993). If Plaintiff's claims are PACA trust claims, then they cannot be property of any of the bankruptcy estates. If not, the claims may be characterized as fraudulent transfer claims, likely property of the DDJ, Inc. and DDJ, LLC estates; or alter ego claims, which might or might not be property of the DDJ, Inc. and DDJ, LLC chapter 7 estates. In re Folks, 211 B.R. 378 (9th Cir. BAP 1997).

The motions to dismiss fall into several categories. First, each of the chapter 7 trustees

9

asserts that the complaint should be dismissed because it violates the automatic stay. Several of the motions to dismiss assert that as to the particular Moving Party, the complaint, the complaint must be dismissed because it is barred by the applicable statute of limitations. Some defendants assert that even if there is a PACA trust, they cannot be held liable. The most telling argument is that Plaintiffs failed to perfect their PACA trust rights. It is that argument on which the court will focus.

Did Plaintiffs perfect their PACA trust rights?

The most comprehensive argument that the Flores failed to protect their PACA trust rights was made by the Vartan/Yeramian defendants in Motion to Dismiss Docket Control No. CBH-1. As those Moving Parties observe, the common denominator of all the claims is the existence of a PACA trust from which the Plaintiffs allege they are entitled to benefits. If Plaintiffs are not entitled to PACA trust benefits, then the complaint must fail against all defendants. Therefore, the court will address primarily in these findings whether Plaintiffs preserved PACA trust claims.

Congress enacted the Perishable Agricultural Commodities Act ("PACA") in 1930. The intent of PACA was to prevent unfair business practices and promote financial responsibility in the fresh fruit and produce industry. Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 282 (9th Cir. 1997). The purpose of PACA was "primarily to eliminate unfair practices in the marketing of perishable agricultural commodities in interstate commerce in the case of a declining market by making it difficult for unscrupulous persons to take advantage of shippers by wrongful rejection of the goods upon arrival at a point where it is expensive and impractical for the shipper to enforce his legal rights." Martinelli & Co., Inc. v. Simon Seigel Co., 176 F.2d 98, 100 (1st Cir. 1949). See 7 U.S.C. § 499e(c)(1). PACA requires "licensing of all entities qualifying as commission merchants, dealers, and brokers (buyers); bars a variety of unfair trade practices by buyers; and provides various remedies when violations occur." Am. Banana Co., Inc. v. Republic Nat'l Bank of N.Y., 362 F.3d 33, 36 (2nd Cir. 2004)(internal citations omitted). "PACA requires buyers to make 'full payment promptly' for all commodities received from produce sellers." Id. (citing 7 U.S.C. § 499b(4)). To accomplish its purpose, PACA provides for the

10

creation of a statutory trust whenever produce is delivered.

The supplier of produce becomes a beneficiary of a PACA trust. A PACA trust is a "non-segregated floating trust" that applies to all of the buyer's produce and inventory and all proceeds from sale of produce until full payment is made. Essentially, the trust consists of produce purchased from suppliers, all inventories of fruits or other products derived from the produce, and receivables or proceeds from the sale of the produce. Magic Restaurants, Inc. v. Bowie Produce Co. (In re Magic Restaurants, Inc.), 205 F.3d 108, 111 (3rd Cir. 2000).

PACA specifically provides:

> "Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents."

7 U.S.C. § 499e(c)(2).

Although the PACA trust automatically goes into effect at the time possession of the produce is transferred, produce sellers must properly preserve their trust rights by meeting specific notification requirements. 7 U.S.C. § 499e(c) provides for the establishment of the PACA trust. Subsection (3) states as follows:

> "The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary [of Agriculture], (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction."

Subsection (4) goes on to state:

> "In addition to the method of preserving the benefits of the trust specified in paragraph (3), a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust. The bill or invoice statement must include

the information required by the last sentence of paragraph (3) and contain on the face of the statement the following: 'The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by § 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

7 U.S.C. § 499e(c)(4). The requirements of this section are amplified by the Code of Federal Regulations at 7 C.F.R. § § 46.2(aa) and 46.46(e).

Unless a produce seller complies strictly with the PACA notice provisions, any PACA trust rights will be lost. The "language of the statute unambiguously required the seller to give notice to the buyer." Bowlin & Son, Inc. v. San Joaquin Food Serv., Inc. (In re San Joaquin Food Serv. Inc.), 958 F.2d 938, 940 (9th Cir. 1992).

Nowhere in the complaint do Plaintiffs assert that they gave written notice of their intent to preserve their PACA trust rights to the DDJ entities. At argument on the motions to dismiss, Joe Flores acknowledged that no written notice of intent to preserve the PACA trust rights was given by the Flores' to the DDJ entities. He also acknowledged that he is not a PACA licensee. He asserted that he relied on the language in the invoices from the DDJ entities to third party purchasers. The complaint at ¶ 66 alleges:

"Plaintiffs are informed, believe and thereon allege that both DDJ, Inc., and DDJ, LLC, while invoicing sales consummated on behalf of Flores' perishable commodities would preserve the benefits of the P.A.C.A. Trust Assets for their principal (Flores') by incorporating language on the billing invoice, and notice of DDJ, Inc.'s and DDJ, LLC's, intent to preserve the trust as prescribed in 7 U.S.C. § 499e(c)(3)(4)."

Thus, Plaintiffs assert that they preserved their PACA trust rights because the DDJ entities complied with 7 U.S.C. § 499e(4). The DDJ entities were licensees. They used billing or invoice statements that provided notice of the licensee's intent to preserve any PACA trust rights on behalf of the produce seller to the DDJ entities.

7 C.F.R. § 46.46(c)(2) amplifies the requirements of the statute. It states:

"Any licensee, or person subject to license, who has a fiduciary duty to collect funds resulting from the sale or consignment of produce, and remits such funds to its principal, also has the duty to preserve its principal's rights to trust benefits in accordance with paragraph (f) of this section."

Paragraph (f) of 7 C.F.R. § 46.46 describes two methods to preserve a PACA trust.

12

First, the original seller of the produce to the produce dealer (licensee) must give notice of the intent to preserve the trust. That notice must include certain information and must be given within a limited and prescribed time period. However, under 7 C.F.R. § 46.46(f)(3), as under 7 U.S.C. § 499e(c)(4), there is an alternate method for licensees. 7 C.F.R. § 46.46(f)(3) states that licensees may choose an alternate method of preserving trust benefits. "Licensees may use their invoice or other billing statement to preserve trust benefits."

This is the provision upon which the Plaintiffs rely. They assert that DDJ, Inc. was a licensee. DDJ, Inc. preserved the Flores' trust benefits by including required information on invoices from DDJ to persons to whom it sold the produce.

There are no disputed facts here. The complaint does not allege that Plaintiffs gave the notice required under 7 U.S.C. § 499e(c)(3). Mr. Flores agreed at argument that he did not give that notice. Rather, it is his argument that DDJ, Inc. gave the notice described at 7 U.S.C. § 499e(c)(4) and that this notice preserved his rights to a PACA trust.

Thus, if this argument is insufficient as a matter of law, the complaint must be dismissed as to all its claims for relief without leave to amend. The court has concluded that this argument does not suffice as a matter of law.

Judge Ishii observed this defect in dismissing PACA trust claims in the underlying district court action. The district court stated there:

> "First, Flores relies upon a theory that individuals had control of [the DDJ entities] and dissipated the PACA trust. The Complaint does not include facts to support a PACA trust dissipation theory primarily because Flores does not allege giving notice of any intent to preserve PACA benefits as required by 7 U.S.C. § 499e(c)(3). Flores claims any right Flores had to the PACA trust was preserved by writing the state (not federal) agricultural department concerning [DDJ's] alleged refusal to provide files to Flores. The court finds that such an act is not sufficient compliance with federal law requiring notice of intent to preserve the PACA trust."[6]

Now, Plaintiffs make the argument about the language in the invoices. As a matter of law, this will not suffice.

As PACA licensees marketing Plaintiffs' fruit, the DDJ entities were required to give the

---

[6] At Defendant's request for judicial notice, Exhibit 4.

13

appropriate notice to buyers in order to preserve the PACA trust created when delivery was made pursuant to the sale. Thus, to the extent buyers failed to pay, Plaintiffs' trust rights and PACA remedies were preserved. However, Plaintiffs are not claiming that the buyers invoiced by the DDJ entities did not pay. Instead, Plaintiffs are asserting that the DDJ entities received payment but did not pay Plaintiffs. Plaintiffs never gave timely notice to the DDJ entities of their intent to preserve their PACA trust rights under 7 U.S.C. § 499e(c)(3) as amplified by 7 C.F.R. § 46.46(c)(2). Therefore, Plaintiffs' claim for a PACA trust cannot stand. In sum, it appears beyond a doubt that Plaintiffs can prove no set of facts in support of the claim entitling them to relief. Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

The automatic stay.

The chapter 7 trustees have asserted that the claims against them violate the automatic stay. This is certainly and obviously correct. Not only that, the claims for relief against the individual debtors in the bankruptcy cases in question also violate the automatic stay. 11 U.S.C. § 362(a).

Based on the determinations set forth above, it is not necessary to reach the statute of limitations argument or any of the other arguments raised in the various motions to dismiss. By separate order, the complaint will be dismissed without leave to amend.

DATED: February 3, 2006

WHITNEY RIMEL, Judge
United States Bankruptcy Court

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA ) 
) ss.
COUNTY OF FRESNO )

I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within above-entitled action; my business address is 2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721. On February 3, 2006 , I served the within document on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Fresno, California, addressed as follows:

SEE ATTACHED

I certify (or declare), under penalty of perjury, that the foregoing is true and correct. Executed on February 3, 2006, at Fresno, California.

_____
Kathy Torres, PLS

| | |
|---|---|
| 1 | Joe and Connie Flores<br>P. O. Box 3086 |
| 2 | Visalia, California 93278 |
| 3 | Stephen P. Drobny, Esq.<br>Casey Martin, Esq. |
| 4 | P. O. Box 28912<br>Fresno, California 93720-1501 |
| 5 | |
| 6 | David R. Jenkins, Esq.<br>P. O. Box 1406<br>Fresno, California 93716 |
| 7 | |
| 8 | Michael Terry Hertz, Esq.<br>P. O. Box 40012<br>Fresno, California 93755-0012 |
| 9 | |
| 10 | Jeffrey L. Wall, Esq.<br>6067 N. Fresno Street, #101<br>Fresno, California 93710-5264 |
| 11 | |
| 12 | Robert Vartan, Esq.<br>P. O. Box 5121<br>Fresno, California 93755-5121 |
| 13 | |
| 14 | Albert J. Berryman, Esq.<br>5260 N. Palm Ave., #421<br>Fresno, California 93704-2209 |
| 15 | |
| 16 | James B. Betts, Esq.<br>P. O. Box 28550<br>Fresno, California 93729-8550 |
| 17 | |
| 18 | Myron F. Smith, Esq.<br>4321 N. West Ave., #106<br>Fresno, California 93705 |
| 19 | |
| 20 | Mark E. Crone, Esq.<br>5260 N. Palm Ave., 4th Floor<br>Fresno, California 93704-2209 |
| 21 | |
| 22 | Christopher E. Seymour, Esq.<br>5260 N. Palm #221<br>P. O. Box 9489 |
| 23 | Fresno, California 93792-9489 |
| 24 | C. Russell Georgeson, Esq.<br>1111 E. Herndon #217 |
| 25 | Fresno, California 93720 |
| 26 | Michael L. Farley, Esq.<br>1120 W. Main Street |
| 27 | Visalia, California 93291 |
| 28 | |

| | |
|---|---|
| 1 | Patrick J. Gorman, Esq.<br>246 W. Shaw Avenue |
| 2 | P. O. Box 16339<br>Fresno, California 93755-6339 |
| 3 | |
| 4 | Thomas H. Armstrong, Esq.<br>5250 N. Palm Ave., #224<br>Fresno, California 93704 |
| 5 | |
| 6 | Laura Palazzolo, Esq.<br>Ten Almaden Blvd. 11th Floor<br>San Jose, California 95113-2233 |
| 7 | |
| 8 | Cheryl Jordan, Esq.<br>19400 Stevens Creek Blvd., #200<br>Cupertino California 95014-9200 |
| 9 | |
| 10 | Howard A. Sagaser, Esq.<br>Chad Schieferle, Esq.<br>P. O. Box 1632 |
| 11 | Fresno, California 93717-1632 |
| 12 | Russell G. Vanrozeboom, Esq.<br>5200 N. Palm Ave., #211 |
| 13 | Fresno, California 93704 |
| 14 | Kevin W. Wheelwright, Esq.<br>5000 Hopyard Road #400 |
| 15 | Pleasanton, California 94588 |
| 16 | Hagop T. Bedoyan, Esq.<br>5200 N. Palm Ave., #211 |
| 17 | Fresno, California 93704 |
| 18 | Mark D. Houle, Esq.<br>650 Town Center Dr., 7th Floor |
| 19 | Costa Mesa, California 92626-7122 |